UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS E. MYERS, d/b/a MYERS' MOBILE HOME PARK,<br><br>    Plaintiff,<br><br>    vs.<br><br>THE CITY OF CHENEY, a Municipal Corporation, et al.<br><br>    Defendants. | NO. CV-07-0317-JLQ<br><br>ORDER DENYING PLAINITFF'S MOTION FOR INJUNCTIVE RELIEF AND ORDER OF DISMISSAL WITHOUT PREJUDICE |

**BEFORE THE COURT** is Plaintiff's Motion for Injunctive Relief (Ct. Rec. 27) filed October 10, 2007. On October 12 and October 19, after receiving supplemental briefing, the court held hearings on the motion, which the court denied. Dennis Clayton appeared on behalf of Plaintiff and Frank Conklin appeared on behalf of the Defendant City of Cheney. The following order is entered to memorialize and supplement the oral ruling of the Court.

## BACKGROUND

This case has a long, confusing, and litigious procedural history dating back at least to 1995. Plaintiff has filed over 1600 pages of documentation related to this action, including some duplications of the same documents. The following is only a summary of relevant facts gleaned from the record. A more exhaustive description of the history of this case can be found in the multiple prior state court opinions which are part of the record. See Ct. Rec. 1, Ex. A at 1-10, and 988-995.

**Fire Chief Issues Notices and Plaintiff Appeals**

In 1995, the Plaintiff, Thomas E. Myers ("Myers"), purchased the property now known as Myers' Mobile Home Park located in Cheney, Washington. In August 1995, the City Fire Chief, John Montague, informed Myers that he would be required to comply with the current fire code. Ct. Rec. 1 at 97. In May and August, 2000 Montague

ORDER - 1

issued notices requiring Myers to install three fire hydrants based upon the requirements of the Uniform Fire Code regarding water supply for fire protection. Myers timely filed appeals of both notices to the Cheney Fire Code Board of Appeals ("Fire Board"). Myers' appeals were based in part on his belief that it was not fair that he was required to install fire hydrants when other similarly situated persons were not similarly required to do so.

### **Fire Board Dismisses Myers' Appeals**

The Fire Board appointed Assistant County Fire Chief Doug Bleeker to be the Hearing Officer for Myers' appeals. On March 13 and May 3, 2001, Myers' appeals were dismissed by the Fire Board after the board considered the appeals abandoned when Myers' failed to comply with Bleeker's demand for a transcript of a 33-hour videotaped evidentiary hearing. Bleeker had not attended the hearing and stopped viewing the videotapes after concluding much of its content was extraneous to the appeals. Despite Myers' motion to reconsider the March 13 order, the Fire Board entered an expanded order dismissing the appeals, ordering Myers to install the fire hydrants, and ordered Myers to pay the City's attorney fees and costs associated with the administrative appeals.

### **Five Years in State Court**

Myers felt the Fire Board's decision requiring him to comply with the Fire Chief's direction to install the fire hydrants, as well as the Board's imposition of attorney fees was incorrect and unlawfully decided. Myers also felt actions taken during the administrative appeal process violated his right to due process, an impartial tribunal, and a fair hearing of his appeals. In seeking to redress both his substantive and procedural grievances, on May 24, 2001, Myers filed in Spokane County Superior Court a combined pleading asserting a Land Use Petition Act (LUPA) petition for review, as well as a Complaint for Declaratory Judgment seeking to invalidate the Cheney ordinance relied upon by the Fire Board. The LUPA petition sought to remedy all of Myers' complaints with the Fire Board proceedings and its orders. It not only challenged the Fire Board's substantive decision upholding the Fire Chief's decision regarding the fire hydrants, but

ORDER - 2

also the alleged the unlawfulness of other actions including: 1) The hearing officer's demand for a transcript of the evidentiary hearing and failure to consider the videotaped evidence in making his decision; 2) The dismissal of his appeals on the basis that the appeals were abandoned after Myers failed to provide a transcript; 3) The hearing officer's/Fire Board's failure to give adequate notice and opportunity to be heard prior to reaching its decisions, entering findings, and dismissing his administrative appeals; 4) The Fire Board's failure to rule upon the Motion to Reconsider and Vacate the March 2001 order; and 5) The improper ex-parte involvement of City employees in the decisions of the Fire Board. Ct. Rec. 1, Ex. 154-186.

In July 2001, Plaintiff filed in the state court cause of action a pleading entitled "Motion for Temporary Restraining Order and Petition for Constitutional Writ of Certiorari." The restraining order sought to prohibit the City from enforcing the Fire Board's order, while the petition for writ again asserted the constitutional due process errors Myers' had essentially already asserted in the LUPA petition. Later, Myers amended the earlier filed complaint for declaratory relief to add the Petition For Constitutional Writ of Certiorari. In a series of rulings which included a number of factual and legal findings on the merits, Superior Court Judge Paul Bastine, dismissed the LUPA petition based upon inadequate service, denied the Petition For Constitutional Writ of Certiorari (Ct. Rec 1 at 1-17), and imposed sanctions upon Myers for the filing of excessive discovery motions (Ct. Rec. 1 at 39-43).

Myers appealed these orders. On appeal, the state Court of Appeals reversed the Superior Court's dismissal of the LUPA petition holding that service of the LUPA petition was proper. Ct. Rec. 1 at 992. The denial of the Petition For Writ of Certiorari was affirmed by the court on different grounds. It reasoned that the writ was not available when there is an adequate remedy at law, which the Court of Appeals advised a LUPA petition would provide. Ct. Rec. 1 at 993. The court also affirmed the imposition of sanctions. Ct. Rec. 1 at 994.

In light of the Court of Appeals' ruling, the Superior Court proceeded to rule upon the LUPA petition and the Complaint for Declaratory Judgment. While summary

ORDER - 3

judgment motions on the merits of the claims were pending, Myers also filed a motion to file a second amended complaint which sought to add claims against the Fire Chief, Director of Public Works, and the Mayor for damages under 42 U.S.C. § 1983 and RCW 64.40. Ct. Rec. 1 at 1497-1525. On September 13, 2004, Superior Court Judge Salvatore Cozza entered an order dismissing Myers' LUPA petition and therein adopted verbatim the August 31, 2001 findings entered by Judge Bastine on both the substantive and procedural aspects of the LUPA petition. Ct. Rec. 1 at 85-117. In addition, Judge Cozza denied the relief sought in Myers' declaratory judgment action (related to attorney fees) and ordered Myers' to pay the attorney fee award imposed by the Fire Board. Judge Cozza denied Myers' motion to amend the complaint based upon the rationale that he was dismissing all of the pending claims on summary judgment. He also denied the City's request for additional CR 11 sanctions. Myers' motion for reconsideration of Judge Cozza's decision was denied.

  Both parties again appealed the Superior Court's decisions. On June 22, 2006, the Court of Appeals ruled again. As to the dismissal of the LUPA petition, the court clarified that LUPA only permits courts to review land use decisions as defined by that statute. The court held that the only land use decision in the case was the Fire Chief's decision instructing Myers to install fire hydrants. The court ruled the Fire Chief and Fire Board's decision to require Myers to install hydrants was correct and thus the LUPA petition was properly denied. However, as to the remainder of Myers' LUPA petition, including the claims regarding the procedural irregularities of his administrative appeals, the court recanted its own previous ruling advising that LUPA provided a proper avenue for review, as these matters were "interlocutory procedural rulings," and not land use decisions. Because the lower court lacked jurisdiction under LUPA to decide these issues and because no alternative cause of action had been plead by Myers, the lower court was without authority to decide these claims. The court also reversed the lower court's decision on the issue attorney fees, affirmed the denial of sanctions, and deemed Myers' appeal of the decision on his motion to amend waived because Myers failed to provide any support for the appeal. Ct. Rec. 1, Ex. A at 26-36.

ORDER - 4

**Myers Files § 1983 Action in Federal Court**

On May 9, 2007, the City of Cheney allegedly issued 720 civil infractions against Myers which seek $365,000 in civil penalties based upon Myers' noncompliance with the Municipal Code and the Fire Chief's order to install three additional fire hydrants. On October 10, 2007, one day prior to a scheduled hearing in Cheney Municipal Court, Myers filed a Complaint for Injunctive Relief in this court seeking injunctive relief and "further relief as the court deems appropriate" for the alleged violation of Meyers' right to due process pursuant to 42 U.S.C. § 1983 and state law. Plaintiff asserts the same claims he had previously attempted to pursue with the writ of certiorari and the LUPA petition in state court. Myers' contemporaneously filed a Motion for Temporary Injunction seeking an order temporarily enjoining the City of Cheney from prosecuting him. At oral argument, counsel for Myers advised the court that he has attempted to raise his constitutional due process claims before the Cheney Municipal Court, however his attempt to do so was rejected by the Commissioner hearing that case. There is no documentary evidence in the record pertaining to the municipal court proceedings.

After the hearing held on October 12, 2007, this court continued the proceeding to permit the parties to submit additional briefing on the following issues: 1) Whether subject matter jurisdiction is barred under the Rooker-Feldman doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005); 2) Whether the Court should abstain from hearing this case under the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971); and 3)Whether the doctrines of res judicata and/or collateral estoppel pose an obstacle to the likelihood of success of Plaintiff's § 1983 claims asserted herein.

## ANALYSIS

Myers requests the court to preliminarily enjoin the civil infraction prosecution proceeding against him in Cheney Municipal Court on the grounds that the orders upon which the infractions are based were obtained in a manner which violated his due

process rights.

The existence of a pending state court proceeding filed by local government presents the question whether this court should abstain under the so-called "Younger Doctrine" originating from *Younger v. Harris*, 401 U.S. 37 (1971). "The rule in *Younger v. Harris* is designed to 'permit state courts to try state cases free from interference by federal courts.' " *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (quoting *Younger*, 401 U.S. at 43, 91 S.Ct. 746). *Younger* abstention ensures that individuals or entities who allegedly have violated state laws cannot seek refuge from enforcement of those laws behind the equitable powers of the federal courts: "[I]f a person is believed to have violated a state law, the state has instituted a criminal disciplinary or other enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead that defense as a basis for enjoining the state proceeding." *Nader v. Keith*, 385 F.3d 729, 732 (7th Cir. 2004). Limiting the intervention of the federal courts preserves the "institutional autonomy of state judicial processes by limiting attempts by litigants to obtain federal declaratory or injunctive relief on constitutional grounds where such relief may interfere with certain types of ongoing state proceedings in which they are involved, and which provide an adequate opportunity to raise the constitutional claims." Laurence H. Tribe, AMERICAN CONSTITUTIONAL LAW § 3-28, at 569-70 (3d ed. 2000).

> "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature...." *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (internal citations omitted).

*Middlesex County Ethics Comm*. requires federal courts to "abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims...."

It is conceded here that there are ongoing state judicial proceedings, which had been instituted before this suit was filed. To the court's knowledge, the Myers' civil infraction proceedings are still pending in Cheney Municipal Court. It is further conceded that these ongoing proceedings implicate important state and local interest: the

ORDER - 6

enforcement and application of ordinances and land-use regulations. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603-04, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (applying Younger abstention where state brought a civil nuisance action against a theater showing pornographic movies); *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1083 (9th Cir. 1987) (holding that a city's civil enforcement action to compel compliance with a municipal zoning ordinance involved an important state interest). Finally, the court notes that Myers' does not challenge a regulation or ordinance as unconstitutional. Rather he attacks the evidentiary practices of the Fire Board/Hearing Officer and the manner in which his appeals were decided. The court is not aware of a law or regulation that would otherwise preclude the state court from examining these constitutional challenges. Myers has the opportunity to raise, and according to counsel, he apparently did in fact try to raise his constitutional claims in the state court proceedings. Although his attempt to raise those claims was apparently rejected by Commissioner Chinn, Myers will have another chance to bring those claims to the Superior Court. The Superior Court's decision, if unfavorable, may then be appealed all the way through the Washington state court system. If Plaintiff remains dissatisfied with the state courts' treatment of his federal claims, he may seek certiorari in the United States Supreme Court. Myers can litigate his claims fully in the state forum. He has not shown that he will be forced to pay any infractions potentially to be imposed and enforced before he has had a chance to adjudicate his federal claims in the state forum. Plaintiff has yet to be required to pay any fine, and there is no reason to think that he will be forced to do so before his appeal is heard in the state forum. Because the state court procedures offer an adequate opportunity to seek judicial review of any order concerning the alleged infractions, *Younger* abstention applies.

At oral argument Plaintiff's counsel raised the concerns that his client is elderly and the state court proceedings may take too long, especially in light of his previous lack of success. However, the assertion that state proceedings are lengthy does not eliminate the grounds for *Younger* abstention. As the Supreme Court has made clear, only when the timeliness issue amounts to a procedural bar do we decline to abstain due to the

ORDER - 7

inadequacy of the forum. *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15, 107 S.Ct. 1519, 1521, 95 L.Ed.2d 1 (1987). Although there are instances in which timeliness plays a role in the adequacy of a state forum, *see e.g. Meredith v. Oregon*, 321 F.3d 807, 818 (9th Cir.2003), this case is not one of them. Moreover, Plaintiff's lack of success thus far in Washington state courts does not render the forum inadequate. The state court only held that the state court lacked jurisdiction *under LUPA* to review the alleged procedural irregularities and due process violations. This does not mean that the state court lacks jurisdiction to hear constitutional claims when presented in the proper context.

    Because Plaintiff's case fits cleanly within the criteria for abstaining under *Younger*, the court is obliged to decline jurisdiction unless some exception applies. The three exceptions to the Younger abstention doctrine are: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman*, 420 U.S. at 611, 95 S.Ct. 1200; (2) "the challenged statute is flagrantly and patently violative of express constitutional prohibitions[,]" *Moore v. Sims*, 442 U.S. 415, 424, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (quotation omitted); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 125, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). These exceptions have been interpreted narrowly.

    Myers does not challenge the constitutionality of a statute and the constitutional dimension of the errors claimed does not, by themselves, constitute an exception to the application of *Younger* abstention. While the City's issuance of 720 infractions might suggest its actions are being taken to harass Myers, there is inadequate evidence in the record to conclude Myers' prosecution is being conducted in bad faith. Accordingly, the record does not warrant the application of a *Younger* exception and plaintiff's claims for injunctive relief must be denied based on the *Younger* abstention doctrine.

    Even if the court were to find an exception to *Younger* applies here and retain jurisdiction over this action, Myers would not be entitled to injunctive relief because Myers has not adequately demonstrated a likelihood of success on the merits sufficient to justify the extraordinary remedy of a preliminary injunction. Specifically, there are sufficiently serious questions as to whether the doctrines of collateral estoppel and/or res

ORDER - 8

judicata also bar the instant action against the City of Cheney. Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. Myers admits the same issues were raised (although unsuccessfully) pursuant to a petition for writ of certiorari and a LUPA petition in state court. There is a genuine issue here as to whether Judge Bastine's decision on the merits of Myers' writ of certiorari, though affirmed on different grounds by the court of appeals, bars this suit. *See Diruzza v. County of Tehama*, 323 F.3d 1147, 1153-56 (9th Cir. 2003) (issues decided by trial court survive with attendant collateral estoppel effect after appellate court's affirmance on different grounds), *citing, e.g., People v. Skidmore*, 27 Cal. 287, 292-93 (Cal. 1865). Moreover, the doctrine of res judicata precludes parties from re-litigating not only causes of action that were brought, but also causes of action that *could have been brought* in a prior action. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (stating that "res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised or could have been raised' in a prior action").

## CONCLUSION

At its heart, this dispute is about the installation of three fire hydrants, which all parties recognize serves the safety interests of the public. Litigation is but one device available for resolving disputes which, as the parties have experienced in this case, is accompanied by the risk of unfavorable outcomes, is a time-consuming process and involves substantial time and monetary cost to the litigants-- and society. It is imaginable that the hydrant installation would cost less than the attorney fees expended in this dispute over the course of six years of litigation. The court would encourage the parties to explore the use of alternative dispute resolution procedures to resolve their dispute.

For the reasons set forth above, Plaintiff's Motion for Injunctive Relief (Ct. Rec. 27) is **DENIED.** The court declines to exercise jurisdiction in this case under the Younger abstention doctrine and the instant complaint is **DISMISSED** without prejudice. *Juidice v. Vail*, 430 U.S. 327, 348 (1977); *Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988). The City of Cheney's request for CR 11 sanctions is **DENIED**.

**IT IS SO ORDERED.** The Clerk of this court shall enter this Order, enter judgment of dismissal of the complaint and the claims therein without prejudice and without costs or attorney fees to any party, forward copies to counsel, and CLOSE THE FILE.

**DATED** this 2nd day of November, 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 10